886 A.2d 1120

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Robert WHARTON, Appellant.**

Supreme Court of Pennsylvania.

Submitted Aug. 29, 2005.

Decided Nov. 28, 2005.

Robert Wharton, pro se.

Hugh J. Burns, Philadelphia, Amy Zapp, Regina M. Oberholzer, Harrisburg, for the Com. of PA.

Before: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice BAER.

In this capital case, Appellant Robert Wharton appeals *pro se* from the order of the Court of Common Pleas of Philadelphia County dismissing his second petition for relief pursuant

to the Post–Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541–9546, as untimely filed. We affirm.

The murders of Bradley Hart and his wife Fern were the culmination of a series of crimes committed by Appellant and his cohorts against the Hart family in retribution for a dispute over the quality of home improvement work Appellant performed in the summer of 1983 at the Harts' residence and at a radio station owned by Mr. Hart's father, the Reverend Samuel Hart. When Mr. Hart refused to pay Appellant's employer for the work, Appellant complained bitterly and blamed Bradley Hart for his lost wages. He vowed to make the Hart family pay.

Appellant began victimizing the Harts by burglarizing their home with Larue Owens on Sunday, August 14, 1983, at a time when Appellant and Owens knew the Harts would be at church. Appellant returned the following week with Owens and Eric Mason, and stole additional property. This time they also vandalized the Harts' home by slashing furniture; ransacking closets; mutilating family photographs; pouring different liquids such as bleach, paint, and oil throughout the house; and, defecating and urinating on the floors. On September 4, 1983, Appellant burglarized Reverend Hart's church, stole cash and computer equipment, and pinned a photograph of Bradley Hart to a wall with a letter opener. Then, in early January of 1984, Appellant, Mason, and Thomas Nixon went to the Harts' home intending to rob them. The men abandoned their plan when they discovered the Harts had another person visiting in the house.

Finally, in the late evening of January 30, 1984, while Bradley and Fern Hart were home alone with their seven-month-old daughter, Appellant and Mason came to the Harts' home. When Bradley Hart answered the door, Appellant and Mason forced their way in at knifepoint. Initially, they coerced Bradley Hart into writing Appellant a check for nine hundred and thirty four dollars as settlement for the debt Appellant felt was owed to him. Next, the two men tied up the Harts on a couch holding them captive, while the intruders watched television and talked for several hours. Eventually,

they decided to separate the couple. Appellant took Fern Hart upstairs where he bound her hands and legs; covered her eyes, nose, and mouth with duct tape; strangled her with a necktie; and ultimately drowned her in a bathtub. Meanwhile, Mason took Bradley Hart to the basement where Mason forced Bradley Hart to lie with his face in a pan of water; placed his foot on Bradley Hart's back; and strangled him to death with an electrical cord. Appellant and Mason fled, but not before they turned off the heat in the house and abandoned the Harts' infant child on a bed in an upstairs bedroom.

On February 2, 1984, concerned that he had not heard from his son or daughter-in-law, Reverend Hart went to the home and discovered their bodies. When he found the infant, she was suffering from dehydration and neglect. She was immediately transported to a hospital, where she experienced respiratory arrest brought on by shock and hypothermia. She eventually recovered.

An investigation immediately led police to suspect Appellant. When police executed search warrants on his girlfriend's house, they discovered items belonging to the Harts and obtained a warrant for Appellant's arrest. When he was taken into custody on February 7, 1984, he confessed and named Eric Mason as his accomplice in the murders.[1]

On July 2, 1985, a jury convicted Appellant of, *inter alia,* two counts of murder in the first degree. Following a penalty-phase hearing, the jury returned a verdict of death against Appellant for each murder count upon the finding of three aggravating circumstances that outweighed the finding of three mitigating circumstances. The trial court officially imposed the sentences of death against Appellant on September 24, 1986.

On direct appeal, Appellant asserted various issues for review, raising guilt-phase errors, as well as penalty-phase

---

1. A fuller version of the detailed evidence supporting Appellant's conviction is set forth in this Court's 1992 opinion addressing Appellant's initial direct appeal *Commonwealth v. Wharton,* 530 Pa. 127, 607 A.2d 710 (1992) (*Wharton I*).

errors. Addressing each issue, we affirmed the convictions for murder in the first degree and the related offenses, but vacated the death sentence, and remanded for a new sentencing hearing. *See Commonwealth v. Wharton*, 530 Pa. 127, 607 A.2d 710 (1992) (*Wharton I*) (holding that the trial court's failure to instruct the jury on torture during the penalty phase was prejudicially deficient).

On remand, a new sentencing hearing was conducted beginning on November 30, 1992. The second jury returned its verdict on December 23, 1992, again determining that Appellant should be sentenced to death.[2] Appellant's motions to set aside the verdict were argued before the trial court and ultimately denied. The trial court again formally sentenced Appellant to death on August 18, 1993. On direct appeal, we affirmed the judgment of sentence in an opinion filed September 29, 1995. *Commonwealth v. Wharton*, 542 Pa. 83, 665 A.2d 458 (1995) (*Wharton II*). The U.S. Supreme Court denied *certiorari* on June 10, 1996. *See Wharton v. Pennsylvania*, 517 U.S. 1247, 116 S.Ct. 2504, 135 L.Ed.2d 195 (1996).

Having exhausted his direct appeal rights, Appellant filed his first PCRA petition *pro se*, on June 28, 1996. Counsel entered his appearance and filed an amended PCRA petition on January 21, 1997. The Commonwealth filed an answer and moved to have the petition denied without an evidentiary hearing. On June 10, 1997, the Court of Common Pleas of Philadelphia County (PCRA court) issued a notice of intent to dismiss without a hearing and on June 23, 1997, the PCRA court denied relief. We affirmed on November 25, 2002.

---

**2.** The jury found two aggravating circumstances: that the killing was done during the perpetration of a felony, 42 Pa.C.S. § 9711(d)(6); and, that Appellant had been convicted of another federal or state offense, committed either before or at the time of the offense at issue, for which a sentence of life imprisonment or death was imposable, 42 Pa.C.S. § 9711(d)(10). It also found one mitigating circumstance: that other evidence of mitigation existed concerning the character and record of Appellant and the circumstances of his offense, 42 Pa.C.S. § 9711(e)(8). The jury found the aggravating circumstances outweighed the mitigating circumstance and again sentenced Appellant to death for each murder.

*Commonwealth v. Wharton*, 571 Pa. 85, 811 A.2d 978 (2002) (*Wharton III*).

Less than two months later, on January 13, 2003, after the one-year time period during which a timely PCRA petition may be filed, *see* 42 Pa.C.S. § 9545(b)(1) (discussed below); Appellant filed this, his second, PCRA petition.[3] Despite having filed his petition more than a year after final judgment on direct appeal, Appellant failed to set forth any of the exceptions to the one-year time requirements of the PCRA. *See* 42 Pa.C.S. § 9545(b)(1) (setting forth the exceptions to the one-year time requirement). On January 22, 2003, the PCRA court issued a notice of intent to dismiss, and on February 11, 2003, the PCRA court dismissed the petition as premature, noting that Appellant had an appeal pending in federal court, which had not yet been litigated. The Commonwealth sought reconsideration alleging that the PCRA petition should have been dismissed as untimely filed, rather than as premature. The PCRA court heard argument outside of Appellant's presence on March 12, 2003, and denied reconsideration of its order dismissing the PCRA petition on the basis that it was filed prematurely.[4] Appellant appealed the order of the PCRA court dismissing the PCRA petition as premature and our Court vacated the PCRA court's order on November 19, 2003, and remanded the matter to the PCRA court for further consideration. *See Commonwealth v. Wharton*, 575 Pa. 166, 835 A.2d 1273 (2003) (*Wharton IV*).[5]

3. Appellant claims that he mailed this second PCRA petition from prison on December 30, 2002; however, it was time-stamped by this Court's Prothonotary's Office on January 13, 2003.

4. It is unclear from the record the reason for Appellant's absence at the hearing; however, any claim of error in this regard was rendered moot by the fact that ultimately we reversed the PCRA court's order dismissing the petition as premature. *See Commonwealth v. Wharton*, 575 Pa. 166, 835 A.2d 1273 (2003) (*Wharton IV*).

5. In dismissing the PCRA petition as premature, the PCRA court relied on *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585 (2000) (holding that when a PCRA appeal is pending before a court, a subsequent PCRA petition cannot be filed until the resolution of the pending appeal "by the highest state court in which review is sought.") However, noting that the only pending matter was related to a federal stay of execution to allow Appellant an opportunity to file a federal habeas corpus

■ On November 25, 2003, the PCRA court again provided Appellant with a notice of its intent to dismiss, this time on the grounds that the petition was untimely and failed to assert an exception to the one-year rule. When Appellant did not amend his petition within the twenty days he was given for that purpose, *see* Pa.R.Crim.P. 909(B)(2)(b), the PCRA court dismissed the petition on December 15, 2003, as untimely. Appellant appealed to this Court, which has jurisdiction to review collateral appeals in capital cases directly pursuant to 42 Pa.C.S. § 9546(d).[6]

On appeal, Appellant questions whether the PCRA court erred in dismissing his petition, which he contends was timely filed. Further, he claims that even if his PCRA petition is untimely on its face, an exception to the time requirements applies so as to avoid the time limitations set forth in the PCRA. Although he failed to articulate any such exceptions within his PCRA petition, or any support for his novel positions, Appellant claims the PCRA court was obligated to notify him that his PCRA petition was fatally deficient because it was out-of-time and averred no exception to the timeliness doctrine. Appellant also claimed that the PCRA court improperly failed to summon him to the hearing on the Commonwealth's reconsideration motion where he claims he could have raised his exceptions. Finally, Appellant claims that he has a constitutional right to relief which should supersede any time constraints of the PCRA.

■ Pursuant to the PCRA, a PCRA petition must be filed within one year of the date that the petitioner's judgment of

petition, we reversed the PCRA court's decision in a *per curiam* order and remanded the matter to the PCRA court. *See Wharton IV*, 835 A.2d at 1273 (citing *Commonwealth v. Whitney*, 572 Pa. 468, 817 A.2d 473 (2003)(recognizing that federal habeas corpus proceedings are not an appeal from any "state court proceeding," distinguishing *Lark*, and holding that *Lark* is inapplicable when no appeal is pending, notwithstanding a parallel *habeas corpus* proceeding in federal court)).

6. When reviewing the denial of post-conviction relief, this Court is limited to "examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." *Commonwealth v. Jones*, 583 Pa. 130, 876 A.2d 380, 384 (2005).

sentence becomes final. 42 Pa.C.S. § 9545(b)(1). A judgment becomes final for purposes of the PCRA "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S. § 9545(b)(3). If a PCRA petition is untimely, this Court has no jurisdiction over the petition. *Commonwealth v. Murray*, 562 Pa. 1, 753 A.2d 201, 202–203 (2000). Without jurisdiction, we simply do not have the legal authority to address substantive claims.

■ As noted above, Appellant's judgment of sentence became final after the U.S. Supreme Court denied *certiorari* on June 10, 1996. According to the time stamp on Appellant's instant PCRA petition, it was filed on January 13, 2003. Even if we accept Appellant's claim that he mailed the instant petition on December 30, 2002, it was still filed over five years after his judgment of sentence became final. Thus, it is obvious that Appellant did not file this PCRA petition within the one-year time requirement of the PCRA. *See* 42 Pa.C.S. § 9545(b)(1).

Nonetheless, Appellant's petition may be considered if it fits within one of three exceptions to the PCRA's timeliness requirements as elucidated in Section 9545(b)(1) of the PCRA. That Section provides:

> Any petition under this subchapter, including a second or subsequent petition, shall be filed within one year of the date the judgment becomes final, unless the petition alleges and the petitioner proves that:
>
> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or

(iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held to apply retroactively.

42 Pa.C.S. § 9545(b)(1). Any petition invoking one or more of these exceptions must be filed within 60 days from the date that the claim could have been presented. *See* 42 Pa.C.S. § 9545(b)(2).

Appellant first contends that the PCRA court's dismissal of his PCRA petition as untimely was in error. He claims that a "second/subsequent petition may be filed in excess of the one-year filing period if a first petition is being litigated." Appellant's brief at 1. Thus, he argues that because his first petition was not resolved by this Court until November 25, 2002 and his second petition was filed on December 30, 2002, his second petition was timely. Although he does not develop his argument further, Appellant is apparently under the mistaken impression that his judgment of sentence did not become final until after the conclusion of his first petition for collateral review.[7] However, as noted above, a judgment becomes final for purposes of the PCRA "at the conclusion of **direct review,** including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking review." 42 Pa.C.S. § 9545(b)(3) (emphasis added). Again, Appellant's judgment of sentence became final for purposes of the PCRA on June

---

7. Appellant baldly cites to *Commonwealth v. Lark,* 560 Pa. 487, 746 A.2d 585 (2000), wherein we addressed the unique situation of newly-discovered evidence becoming available during the pendency of an appeal from the dismissal of a PCRA petition. Noting that a subsequent petition could not be immediately filed because the PCRA court was divested of jurisdiction during the pendency of an appeal on the prior PCRA petition, thus preventing a petitioner from meeting the time constraints associated with newly-discovered evidence claims, we held that a subsequent PCRA petition invoking an exception to the PCRA time restriction must be filed within 60 days after the prior PCRA petition is finally litigated by the highest state court in which review is sought, or upon the expiration of the time for seeking such review. Appellant's reliance on *Lark* ignores his failure to plead the governmental interference exception to the PCRA time requirements within the instant second PCRA petition.

10, 1996 when the U.S. Supreme Court denied *certiorari* of his direct appeal. Thus, on its face, Appellant's second PCRA petition, filed nearly five years later is untimely, notwithstanding the continued litigation of Appellant's first timely PCRA petition.

Next, Appellant claims that he raised an exception to the timeliness requirement and pled it in his PCRA petition; however, the record belies this claim. Our close review of Appellant's PCRA petition reveals that Appellant does not acknowledge that his petition is untimely on its face, much less attempt to raise one of the enumerated exceptions to the time bar. Appellant ignores this deficiency and attempts to remedy his failure by arguing for the first time in his appellate brief to this Court that the governmental interference exception excuses him from the untimely filing of his petition.[8] However, Appellant was required to plead the cognizability of his petition in the petition itself. *See Commonwealth v. Beasley*, 559 Pa. 604, 741 A.2d 1258 (1999) (holding that it is the burden of a petitioner to plead in the PCRA petition exceptions to the time bar and that burden necessarily entails an acknowledgement by the petitioner that the PCRA petition under review is untimely but that one of more of the exceptions apply). Exceptions cannot be raised for the first time on

**8.** Appellant claims that when he wrote to our Prothonotary on January 14, 1998 inquiring about the status of his appeal from the denial of his first PCRA petition he was somehow prevented from raising certain unspecified claims in his first PCRA petition. Specifically, he complains that a member of the Supreme Court's Prothonotary Office improperly forwarded his correspondence to his appointed counsel and that this somehow interfered with his ability to raise such unspecified claims in his first petition. However, the Prothonotary is required by Pa.R.A.P. 3304 to forward such documents to counsel. *See* Pa.R.A.P. 3304 (providing that where an appellant who is represented by counsel submits for filing any type of pleading *pro se*, the Prothonotary shall not docket that pleading, but instead, shall forward it to counsel of record). Additionally, by the time Appellant wrote in 1998, Appellant's first PCRA petition, which was filed on June 28, 1996 and amended on January 21, 1997, was already denied by the PCRA court on June 10, 1997. Thus, we fail to see how forwarding Appellant's 1998 letters of inquiry to counsel of record was improper or retroactively prevented Appellant from raising his unspecified claims in an earlier filed PCRA petition. Moreover, we fail to see what relevance this occurrence has on Appellant's late filing of this, his second PCRA petition.

appeal to this Court. *See* Pa.R.A.P. Rule 302 (stating "issued not raised in the lower court are waived and cannot be raised for the first time on appeal.")

■ Appellant also claims that he attached to his second PCRA petition a "summary of reasons" why the PCRA court should not dismiss his petition, including ineffectiveness of counsel and governmental interference. Again, our review of the PCRA petition belies this claim. Appellant did attach an affidavit-like document which he entitled "Declaration of Robert Wharton." [9] However, in that document he lists instances of alleged ineffectiveness of trial counsel for failing to challenge the admission of certain evidence at trial, for failing to challenge his confession as physically and psychologically coerced, and for failing to interview or present witnesses, including Appellant, to testify and impeach the Commonwealth's evidence. In a second unlabeled attachment, Appellant categorizes instances of trial counsel's ineffectiveness and his first PCRA counsel's ineffectiveness for waiving issues "due to insufficient argument." Again, Appellant makes no attempt to address the timeliness of his second PCRA petition in these attached documents and never mentions, much less argues, his claim of governmental interference, or any other exception for the PCRA's basic time strictures.

Appellant also argues that the PCRA court should have notified him that the petition was "defective" before dismissing it as untimely. As noted, however, the PCRA court's Rule 909(B) notice expressly advised Appellant that the petition was untimely and gave him 20 days to amend it to assert an

9. In a separate claim of error, Appellant argues that these documents may have been misplaced by the filing office, yet such a claim presupposes that an exception to the timeliness requirement is set forth in the attached documents, which is not the case. Additionally, in yet another separate claim of error, Appellant asks us to excuse his failure to plead an exception because there was no designated area on the pre-printed PCRA form allowing for exceptions. This argument fails because it is unsupported by law and because as a *pro se* litigant, Appellant is not excused from complying with the mandates set forth in the PCRA. *See Faretta v. California*, 422 U.S. 806, 834 n. 46, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) (stating that the right of self-representation is not a license to excuse non-compliance with relevant rules of procedural and substantive law.)

exception to the one-year rule. As Appellant did not make any such amendment, this argument fails.

 Finally, Appellant contends that his constitutional right to collateral review is being improperly extinguished by the procedural requirements of the PCRA. He suggests that because his underlying claim involves his constitutional right to self-representation on his first PCRA petition, the time-bar should not apply to his second petition wherein he attempts to challenge that denial. However, we agree with the Commonwealth that this is nothing more than a convoluted way of attempting to carve out an exception to the jurisdictional timeliness requirements of the PCRA for ineffective assistance of counsel claims. It is well settled that allegations of ineffective assistance of counsel will not overcome the jurisdictional timeliness requirements of the PCRA. *See Commonwealth v. Pursell*, 561 Pa. 214, 749 A.2d 911, 915–16 (2000) (holding a petitioner's claim in a second PCRA petition, that all prior counsel rendered ineffective assistance, did not invoke timeliness exception, as "government officials" did not include defense counsel); *see also Commonwealth v. Gamboa–Taylor*, 562 Pa. 70, 753 A.2d 780, 785–86 (2000) (finding that the "fact" that current counsel discovered prior PCRA counsel failed to develop issue of trial counsel's ineffectiveness was not after-discovered evidence exception to time-bar); *Commonwealth v. Lark*, 560 Pa. 487, 746 A.2d 585, 589 (2000) (holding that allegation of ineffectiveness is not sufficient justification to overcome otherwise untimely PCRA claims). Accordingly, this claim fails.

In sum, Appellant's PCRA petition was untimely and did not meet any of the exceptions to the PCRA timeliness requirements. The order of the PCRA court dismissing the instant petition is affirmed. The Prothonotary of the Supreme Court is directed to transmit the complete record of this case to the Governor. 42 Pa.C.S. § 9711(i).

Chief Justice CAPPY, and Justices CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN are with the opinion.